All rise. The United States Court of Appeals for the 9th Circuit is now in session. Please be seated. Good morning, ladies and gentlemen. We're here to hear the argument in the city of San Diego. Counsel? Your Honor, Attorney Don McGrath, San Diego. Assistant City Attorney. Greg Broderick. PAPA Petitioner. Greg Broderick of Downey Brand Firm, Kinder Morgan Energy Partners, et al. Good morning, Your Honor. You wanted to speak to the argument? Yes, Your Honor. I'd first like to ask whether the court has made a ruling on the objection to judicial notice that was late filed by our opponents? No, we have not. We'll hear on that question along with the remainder of the legal issues. Thank you, Your Honor. As stated, I'm the Executive Assistant City Attorney for San Diego. I'm here with my deputy, John Serrano. My bar number is 44139. I'm the lead attorney in this case and have practiced for almost 40 years in this state. We were the co-counsel with the Tetro Firm, and as such, we control all aspects of this litigation. May I ask you what the status of the litigation is now? Is it continuing? Is the other firm continuing to represent the city? Yes, it is, Your Honor. It's been slightly inactive due to this motion. Is there any understanding about whether it will continue to represent the city on a non-contingent basis during the pendency of this argument? We are unable to afford the services of the Tetro Law Firm on a non-contingency fee basis, Your Honor. If the issue were not settled, what proceedings are scheduled? I think the usual. There's been a 12B6, and I don't know if we had a joint council meeting, but if the decision is upheld, we have not had any early meeting of counsel. My decision, recommended to my boss, the San Diego City Attorney, who was also co-counsel in the Santa Clara case, would be to totally rethink the whole issue as to whether we can afford to pursue the litigation. If the lower court decision is upheld. And is there any schedule on the Supreme Court decision? I couldn't hear you, Your Honor. Is there any schedule as to the Supreme Court decision in California? In Santa Clara? Yes. I don't know, Your Honor. There has been a petition for hearing filed, but it hasn't been acted on, is that basically it? I believe that's the fact, Your Honor. All right. Thank you. Your Honor, this case totally discriminates against the government property owners. No other property owners are prohibited from contingent fee arrangement. Under the first section or the first sentence of CCT 731, we are a property owner, and that is how we are entering this proceeding. We're not doing so under the second sentence per se. If the lower court's ruling is upheld, it will relieve the tortfeasor of the consequences of their act, whereas if they committed a similar act against a single individual, that individual would be allowed to hire a contingent fee lawyer. We seek redress as an injured party, not as a sovereign. We think we've satisfied the Bowman test, all of them. We do not dispute Clancy. We never have. We must emphasize there's no California law regarding contingent fee representation where a sovereign sues for a nuisance harm to its own property, in this case the home of the San Diego Chargers, Qualcomm Stadium. We do not seek any ruling contrary to the California Supreme Court, previous law of that court. Not a nuisance abatement case as was Clancy. In that case, counsel? Counsel? Just a second. We have a question. Sure. It's a little difficult because of the telephone. That's all right. My question is, the complaint actually on the public nuisance city cause of action talks about Pueblo water rights and says it's a legally cognizable property, and speaks of great public concern. It seems to be sort of a hybrid cause of action, and that's what's disturbing about it. The part about the stadium seems to be a classic property right, but the part about the water rights doesn't. Does that matter? I don't think so, Your Honor. I think we've plotted as we plotted, and I think you get into a distinction as to the people qua the city, the city qua the people. My boss is very famous for saying that he represents the people of the city of San Diego. But the Pueblo right is a property right in and of itself. What is it a right in? It's a right to certain water? Yes, Your Honor. And the city owns it in some sense? I mean, is it not a sovereign right? I mean, it seems to me that this is a lot closer to what's going on in Clancy, the water rights, because it's basically an ownership qua sovereign, no? Well, I don't think so. In Clancy, there was no ownership right. Clancy was enforcing that city's objections to a bookstore owner. Clancy had a conflict in that he also represented the individual citizen's First Amendment rights. So here he is trying to do two things at once, put the man out of business, and yet deprive his own citizens of the right to read that which they chose to read. Our case is not an abatement of that kind of a nuisance. Our case has no conflict. Nobody likes dirty water, and nobody likes lead paint, as in Santa Clara. So we don't think it's even close to Clancy, Your Honor. Well, the latter can't possibly matter, because the city could have prosecuted the same thing on its own. It wouldn't have had the same conflict, so that doesn't make any sense. But it isn't the non-financial conflict that's the problem. It's the financial conflict. I don't understand the distinction, Your Honor. It's a continuing nuisance. It's going to take money to fix it. Do you distinct between public and private nuisances for purposes of Clancy? No. A public nuisance would seem to me to be closer to the concerns of Clancy. Private, arguably, you've got a proprietary interest you're enforcing, but you've pled both. If you don't see any difference, you don't think it makes any difference? No, I don't, Your Honor. I think we become a victim of a tort, not per se a sovereign in a representative capacity. So how do you, when you're enforcing the Public Health and Safety Code and the Business and Professionals Code, in what capacity are you acting? The BNP, we're acting as the people, Your Honor. One other question is, what is your understanding of the district court's order? Is the district court's order that there can't be any contingent representation or they can't be on the nuisance causes of action, the public nuisance? Any. They disqualified. It's very similar to Santa Clara, Your Honor. They just totally disqualified the law firm. And if you are partially valid and partially invalid, would that make practical sense in terms of dividing up responsibilities and so on? Well, we're doing the people case. They would never have done that. The people are totally separate. As to the city, we control the litigation, and that's the really major distinction that County of Santa Clara brought out. We're an in-house council, retains control over all decision-making, and there was no in-house council in Clancy. The late filed papers, which I really don't like to argue against because I think they're inadmissible, but they don't clarify anything as far as we're concerned. In fact, Justice McAdam, in the County of Santa Clara affirming opinion, says that the only issue in Clancy that was controlled by the city or the city attorney was the decision whether or not to sue or not, not the control of the case qua the case. So that's totally different than here. And we think on our own we could stand, as did Santa Clara, based on the control theory. Whereas Clancy was a sole lawyer in complete control of the litigation, here, as in Santa Clara, the city attorney is in complete control of the litigation. And I'd like to emphasize that my city and my boss, Mr. Aguirre, was one of the lawyers in Santa Clara, Your Honor. Again, Grass Valley, same result, and that was a public nuisance action, which may answer your former question. I would like to reserve some time to rebut if that's okay with the court unless there are more questions. No, that's fine. You may reserve the remaining time. Good morning, Your Honor. It's Craig Broderick for Real Party and Interest, Senior Morgan. Good morning. Good morning. The city would prefer to ignore the high standard for the extraordinary writ that it's seeking and argue in this case as if it were a direct appeal. But, of course, this is a writ action, so the city must meet the test set forth in expoundment. And though we think they can't meet any of the five factors of expoundment, as we argued in our brief, I'd like to bring particular focus to two of those factors. Oh, and I'd like to, by the way, at the outset, note that the California Supreme Court does have something of a schedule for when it decides whether to take a case. They've got 90 days from the date that the petition was filed to determine whether to take the case or not. And I can't remember the exact date, but at some time in mid-July they should determine whether to take the County of Santa Clara case, although there are some situations in which the court can grant itself an extension, I think, of up to another 90 days. So I just wanted to get that out there at the outset. As for irreparable harm and clear error, I think this case really stops at irreparable harm. The city keeps arguing that it's been robbed of its choice of counsel, and I think Mr. McGrath said that their lawyers have been totally disqualified, but that's not the case. In fact, the district court order, which you can find in the city's excerpt at Exhibit L, and I'm specifically referencing page 3, says, and I'm quoting, nothing in this order should be construed as precluding the city from retaining outside counsel on a standard fee arrangement. So all the district court released it. What he did say was that the contingency fee has been totally disqualified. In other words, that they can't represent the city even as to the non-public nuisance tort. That's correct. That's correct. What was the justification for that? Well, I think the justification for that comes from Clancy itself. At page 746, you'll see that the court, the California Supreme Court, said that Clancy bars any interest in the litigation or the action. The city, I think, admits that it has brought claims on behalf of the people, even those separate claims under the Business and Professions Code, and I think they brought a Prop 65 claim and then also a public nuisance claim on behalf of the people at large. And what Clancy says is when you have that kind of claim, your lawyers cannot have a financial interest in any part of the litigation. And I think the reason for that is pretty clear. When you have a simply sovereign action, then it's obvious they can't have any financial interest. I think even the city can see that. But I think the same risks are present when you have the kind of mixed action the city claims it has here. In other words, when you have the same lawyers representing the people and the same lawyers representing the city as a supposed mere property owner, the same kind of problems, the same kind of dangers that the lawyers might be tempted, as the Clancy court said, to tip the scales when making a decision, perhaps with one eye on their personal financial interest, that's the kind of thing Clancy was seeking to avoid. And I think Judge Whalen would correct the fool that Clancy bars any interest in the action or the litigation at all. Well, if the client is in firm control of the litigation, why does it matter? The client controls settlement. The client controls... What danger is it if you have a system that the client, everyone can see that the client's going to be making a decision? Well, I think there's a couple of dangers. And I guess I'd point out that, first of all, that argument didn't satisfy the California Supreme Court and Clancy, where presumably, as Mr. Graf and everybody else would recognize, that the client is always in control. That didn't satisfy the California Supreme Court and Clancy. And then, of course, as Steve pointed out in the papers that we filed last week, the Clancy contract had a control provision in it, and that argument was presented to the California Supreme Court, but it was apparently so irrelevant to their decision-making they didn't even mention it in the decision. But I think the temptation comes up in a couple of different ways as a practical matter, Judge Thomas. And I think the two that I would point to are, first of all, the settlement hypothetical. If you're sitting there across the table from the city and say we went to them and said, you know, we're interested in resolving this litigation. We promised that we will clean this whole thing up in half the time or in one year, instead of the couple of years that we think it's going to take. That presents a real problem for outside counsel, because presumably they can't take a percentage of a kind of injunctive relief or a promise to act. And as far as the client being in total control, yeah, I understand that's always the case, but the city went on at length and brief to mention that it doesn't have the expertise and it doesn't have the ability to do these cases on its own. So presumably the outside counsel who they've hired as experts have some kind of influence as counselors to the city, and that kind of influence could be even subtly and perhaps unconsciously brought to bear. And that, I think, gets to the temptation, the temptation that the Clancy court found unacceptable, not just the fact that the concern would actually arise, but that the temptation would be there. And I think the other reason why this is a problem is as the Clancy court recognized at 7.50 in rejecting the argument that trial court supervision could somehow clear up the Clancy problem, and as the Supreme Court recognized in the Gonzalez-Lopez case in the Sixth Amendment Rights Council context, the kind of subtle decisions that go on day-to-day in litigation, what kind of claims to push, what kind of claims maybe not to press so hard, what kind of depositions to take, what questions to ask in a deposition, all those things are sort of impossible to quantify. And my concern is that the personal financial interest might either actually come into play or the temptation might come into play. And I think the California Supreme Court said it's such a concern, we're just going to make a bright-line rule that says this can't be done. And then lastly, and I'm sorry for the rather long answer, but lastly I think it's important to recognize that the city, the Tatro firm and the city are listed as counsel for both parties, both the people and the city on all the pleadings. And I think it's important to recognize that the city brings a public nuisance claim as a supposedly injured private property owner, and the people have a public nuisance claim under 731 of the Civil Code. So you've got the same lawyers with the same claim, and in one public nuisance claim they have a financial interest and in the other one they supposedly don't. And I think permitting a contingency fee arrangement in that kind of a circumstance would basically wipe out the plaintiff's decision or at least... So if they just made it two separate lawsuits, then it would be okay? Well, I think there would be a number of concerns there, but I think if they just had a lawsuit that was in these sort of super private capacities, that might be okay. But I guess the other problem I have here is that the claims the city supposedly brings as a mere property owner are, as you pointed out earlier, Judge Berzon, they're not the kind of normal claims that a normal person would bring. And that Pueblo groundwater claim, which kind of runs throughout every one of their property owner claims, is a real problem because that's not just a... First of all, nobody owns water in California except the state of California. That's in Water Code 102 and Article 10, Section 2 of the California Constitution. What the Pueblo water right is, it's a right to use water, and it's even more limited than that. The California Supreme Court held in the Vernon Irrigation Ditch case at page 251 that the right to Pueblo water is a community right. It's held in trust for the people by the city. And I'm going to quote from 251. It must be understood that such right could be asserted only to the amount needed to supply the wants of the inhabitants. So it's really the people's water. The city is kind of an administrator. And this is a sort of oddity left over from Spanish and Mexican law and the way that the Southwest got settled, but the bottom line is the water was considered sort of too important a right for anybody to own under their system. But what about the rest of it? I mean, the stadium surely is just a classic ordinary property right. I think the stadium is closer. Yeah, I think the stadium is closer to an ordinary property right. And I think if they just had a claim that was just based on the stadium, I think that would present much, much less of a clancy-type concern. The problem is the Pueblo groundwater right is mentioned in every single one of the city's claims. They didn't bring separate claims based on the stadium and the Pueblo groundwater, et cetera, et cetera. They brought one set of claims, and every time they mentioned the stadium, which they define in the complaint as the property, they mentioned the Pueblo groundwater right. And I think, Judge Bergen, you were right when you pointed out that their complaints, even the supposed property owner portions of the complaint, are sort of littered with references to the public's rights and people's rights. And I just point the court to the first amended complaint, which you can find in our excerpt at 12, in Hinder Morgan's excerpt at 12. I would point you to paragraphs 2, 4, 8, 54, 57, 58, 62, 89, and 90, and I'm sorry for that long list, but I think that covers basically every single property owner claim that the city brings. And I guess I'd like to read from paragraph 8 as an example. And I'm quoting now, the city filed this lawsuit for damages to remediate the property from the Pueblo groundwater, and then this is the important part, to ensure that the public's interest in the property and in the Pueblo groundwater are vindicated and made whole. So I think that really shows that even the city's supposed property owner claims are really broad in the representative capacity. So I guess the short version of that answer, if I have any short answers, are that, first of all, Clancy bars any financial interest in the bottom line litigation, not just in particular claims, but even if the city's test is right that it's only in representative claims, then those Pueblo groundwater rights are, as Judge Berzon pointed out, too close to, they are representative claims. So the city fails. I have a sort of stepping back question. Clancy cites some ethics rulings in American Bar Association standards and so on. Has anybody tried to update those? I mean, does this just strike me as odd? And I'm wondering whether it is somewhat antiquated, the one that Clancy was standing on to begin with. Well, I took a look at some of those at the outset of the case, and it's hard to coordinate because the Bar Association seems to, the ABA seems to change its rules, particularly the numbering system, about every three months. So it's difficult to trace down which ones were which. But getting to, I think, the heart of your question is, is this a sort of old ruling that's no longer relevant? I think it's even more relevant today than it was in 1985 when the California Supreme Court decided Clancy, which isn't that long ago. But I think it's even more relevant today. And you can see through things like the executive order, I think, that was cited in our brief that says, hey, the Justice Department is not going to enter into any contingency agreements unless they're required by law. I think that shows that the tide continues against these kind of order, these kind of contingency agreements that raise these concerns about, you know, the role of outside counsel and government. And I think also it's important to realize that whatever the wisdom of this rule, and I think it is a wise rule having been on the receiving end of it, but I think this is California's rule, and I think if there's going to be any kind of change it probably ought to come from the California Supreme Court, not from anywhere else. Well, in that regard, what is there, can you, you give the status of the litigation to Greg Reinhardt, but what's the schedule of the litigation? If you hadn't brought this motion, what would be the ordinary course? In our litigation in district court, Judge Thomas? Yes. We moved to dismiss their complaint on a number of grounds. It was partially granted and partially denied. It was about concurrent with this motion to excise the contingency agreement. They refiled an amended complaint with, we think, some of the same defects that were in the first complaint. I guess there's no urgency. What I was driving at is there's no urgency, there's no pending motion for preliminary injunction, TRO, or anything. No, although I think that Judge Whalen doesn't hold hearings very often on the motion, so we're kind of expecting, we fully briefed the second motion to dismiss, and we're kind of expecting that any day we'll get an answer from Judge Whalen, and I think at that point we'll have sorted out these pleading problems and have a clear ruling from him. The litigation is really going to go forward, and perhaps Mr. McGrath could speak more clearly to the local rules in San Diego, but I believe the next step is the kind of early settlement conference. They call it something else down there, but there's kind of an early evaluation where an outside person tells you how great or terrible his claims are. Yeah, but nothing's going to happen apparently in the normal course before we learn whether or not the California Supreme Court is going to take that. Right. It seems unlikely that we're going to get too far down the road from now once we get that decision, although the California Supreme Court could push it out in 60 days or so. Hearing the decision as to whether they'll hear the case. That's right, Judge Reinhart. And then once they take or don't take the case, the California Supreme Court is sort of famous for taking a long time to decide, especially civil cases. So it could be a good year and a half or more if they do take it. But you're right. In the next couple of weeks they should decide whether they're going to take it or not. I guess I wanted to point out one other thing at this stage because I see I'm running very low on time. Very low. Very, very low. The city makes kind of a big deal out of the fact that, well, Kinder Morgan's a large company and it can afford to defend itself. So what's the real problem here? And I think I wanted to point out three things very quickly on that. First, of course, We have more than one minute. Okay. First, of course, defendants are entitled to government lawyers who will pursue only the public interest, and as one judge held, truly a rich defendant is entitled to as neutral a lawyer as a poor defendant. Secondly, I think there's a tension between the public interest and perhaps the personal financial interest that applies irrespective of whether the defendants have a lot of money or not. Isn't there a financial interest whenever you have an outside lawyer? This way it cuts in favor of efficiency. If you hire them by the lawyer, it cuts against efficiency and probably costs the city a lot more if the city has the money. But in any event, there's a financial interest. Well, I think the California Supreme Court drew the line between hourly and contingency agreements because they recognized that the outside lawyers were going to be necessary and they wanted to solve this particular problem. And insofar as an efficiency question, I'm not sure that paying lawyers by the hour is less efficient or less costly, or rather less efficient and more costly because I think you run into this settlement problem that the city doesn't really have a big incentive to settle the case when it doesn't have to carry a bunch of litigation costs. Lastly, I think I want to point out, as I'm surely running up against my one minute, that the rule the court sets down in this case, if it gets beyond the Bauman factors and reaches Clancy, is going to be the rule for everybody. And all you have to do is look at the Clancy plaintiffs to understand how this could be turned against a sort of unpopular, underfunded, underserved group. They were basically selling unpopular books, dirty magazines, that kind of thing. And I think there are more circumstances where that could apply. One I thought of is civil forfeiture of property that's supposedly used in a drug crime. This is a real, or any kind of crime, this is a real gray area, what it means to use your house or your car or whatever in a crime. And the little guy, of course, is as much or more in peril than the big guy. But even the big guy is in peril. So I think I just kind of want to leave the court with the idea that if you limit Clancy in any way or if you adopt the rule that the city is urging, it's going to be the rule for everybody. And I think that ought to be foremost in the court's mind. Thank you, Chairman. Thank you, Chairman. If I may, Your Honor, Justice Burson, going back to your question on the Pueblo to me, I think the Denial case, Denial v. Huntington Beach, is very similar. Therein a contingency was allowed on protection of oil rights. I think the similar analogy on water rights. I can't tell which of the justices asked about where we were. I can tell you we're one year into this and we're not very far along, and we need clean water as everybody does in this state. So I go back to this Clancy. You haven't filed a motion. You haven't asked for a CRO. You haven't asked for a preliminary injunction, right? No. We have a prior ruling that they've violated our rights. I mean, there was a master and all that. It's just a matter of getting it cleaned up as quick as possible. They were not doing that, and that's why we brought suit. No, I mean, there's nothing that's going to happen the next 14 days that you've asked the district court to do, right? No, Your Honor. No, Your Honor. The other question I think that was asked by Judge Burson was as to the balancing test. And, again, in the bookstore cases, the First Amendment interest in selling protected material, but the public has a First Amendment interest in having such material. That's Clancy in a nutshell. We don't have that situation. Nobody wants dirty water. So that's the big difference, I think, in Clancy, and that's why I don't think you need to wait. I find that the concurring opinion by Justice McAdams in Santa Clara, I read that late last night and went to sleep with it. I think that's good reading. It traces the case very carefully. It goes through Clancy, the difference between Clancy and us. Finally, they say they've admitted there is no right to appeal, and those papers they late filed with you last Friday. So I don't have any problem with bombing on that issue. And I think that, as Santa Clara said, it's a tactical decision. It's a stall, and they're stalling us from our day in court. Thank you, Your Honor. Thank you, counsel. Case discharged. It will be submitted. This court for this session stands adjourned.
judges: Reinhardt, Berzon, Smith